Brian J. Perkins (SBN 315870)
Melisa Rosadini-Knott (SBN 316369)
PEIFFER WOLF CARR KANE
CONWAY & WISE
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Telephone: (415) 766-3544
Facsimile: (415)840-9435
Email: bperkins@peifferwolf.com

*Additional Counsel Listed
on Signature Page*

Attorneys for Plaintiff, Jane Doe, (M.S.H.)

IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | | |
|---|---|---|
| JANE DOE (M.S.H.), | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO.: |
| | ) | |
| WYNDHAM HOTELS & RESORTS, | ) | **PLAINTIFF'S ORIGINAL** |
| INC. and PALMDALE MOTEL, | ) | **COMPLAINT** |
| MANAGEMENT INC., | ) | |
|     Defendants. | ) | **DEMAND FOR JURY TRIAL** |

TO THE HONORABLE JUDGE OF SAID COURT:

    Jane Doe (M.S.H.), Plaintiff in the above-styled and numbered cause, files this Original Complaint against WYNDHAM HOTELS & RESORTS, INC. and PALMDALE MOTEL MANAGEMENT, INC. as Defendants, and would respectfully show the Court and jury as follows:

## **SUMMARY**

    1.    Jane Doe (M.S.H.) files this civil lawsuit seeking compensation for the harm she suffered as a result of the sex trafficking she endured at Avatar Hotel;

owned, operated, maintained, and controlled by Defendants and their agents and employees.

2.     Sex trafficking is the recruitment, harboring, transportation, provision, obtaining, patronizing, or soliciting of a person for the purposes of causing the person to engage in a commercial sex act either (1) before the person turns 18 years old; or (2) through force, fraud, or coercion.[1] Traffickers or 'pimps' use threats, violence, manipulation, lies, debt bondage, and other forms of coercion to compel adults and children to engage in commercial sex acts against their will.

3.     Sex trafficking has become a public health crisis that has reached epidemic proportions in the United States. It is now widely recognized, including by Congress and many state legislatures, that combating sex trafficking requires more than just criminal penalties for pimps and sex buyers.

4.     Since 2003, federal law, through the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. §1581, et seq, has provided victims of sex trafficking a civil remedy against perpetrators of criminal sex trafficking.

5.     In 2008, Congress recognized the need to extend liability beyond sex buyers and sellers and intentionally expanded the scope of the TVPRA to reach those who—while not criminally liable under the TVPRA—financially benefit from participation in a venture that they know or *should know* engages in criminal sex trafficking.

6.     As discussed herein, Defendants derived financial benefit from facilitating sex trafficking by providing venues where traffickers could exploit victims, including victims like Jane Doe (M.S.H.) with minimal risk of detection or interruption. Defendants continued supporting traffickers, including Jane Doe (M.S.H.)'s trafficker, despite evident and apparent signs of widespread and ongoing sex trafficking in these hotels. Defendants were, therefore, knowingly receiving a

---

[1] 18 U.S.C. §1591; 22 U.S.C. § 7102.

PEIFFER WOLF CARR KANE
CONWAY & WISE
555 Montgomery Street, Suite 820
Francisco, California 94111
415.766.3544 phone • 415.840.9435 fax

PLAINTIFF'S ORIGINAL COMPLAINT AND DEMAND FOR JURY TRIAL

benefit from participation in a venture that Defendants knew or should have known was engaged in sex trafficking.

## PARTIES

7.      Plaintiff, Jane Doe (M.S.H.) is a resident of Idaho. She may be contacted through her lead counsel, whose information is contained below.

8.      Jane Doe (M.S.H.) is a victim of sex trafficking under 18 U.S.C. §1591(a) because she was harbored, transported, or provided for the purpose of causing her, through force, fraud or coercion, to commit a commercial sex act.

9.      The trafficking of Jane Doe (M.S.H.) occurred in or affected interstate commerce.

10.     Given the nature of the allegations in this lawsuit, there is a collective and compelling interest in not publicly revealing the identity of Jane Doe (M.S.H.).[2]

11.     Wyndham Hotels & Resorts, Inc. is a for-profit Delaware corporation with its principal place of business in Parsippany, New Jersey. Defendant Wyndham Hotels and Resorts, Inc. may be served through its registered agent for service Corporate Creations Network Inc. at 3411 Silverside Road, Rodney Building #104, Wilmington, Delaware 19810. Upon information and belief, at all relevant times it owned, operated, controlled, and/or managed the Knights Inn hotel located at 130 E Palmdale Blvd., Palmdale, California 93550 ("subject Knights Inn").

12.     All references to Wyndham Hotels and Resorts, Inc. include any department, division, office, agency, subsidiary, corporate affiliate, predecessor corporation, or successor corporation, whether domestic, foreign, and/or international. The term also includes any director, officer, agent (either with direct/actual authority or implied/apparent authority), employee, person, firm, or corporation acting on behalf of Wyndham Hotels and Resorts, Inc. now or at any time relevant to the claims herein.

---

[2] Plaintiff will file a motion for protective order, if requested by the Court, to proceed under a pseudonym.

PEIFFER WOLF CARR KANE
CONWAY & WISE
555 Montgomery Street, Suite 820
Francisco, California 94111
415.766.3544 phone • 415.840.9435 fax

PLAINTIFF'S ORIGINAL COMPLAINT AND DEMAND FOR JURY TRIAL

13. Wyndham Hotels & Resorts, Inc. will be referred to as "Wyndham" or "Franchisor Defendant."

14. Palmdale Motel Management, Inc. is a is a for-profit California corporation with its principal place of business in Palmdale, California. Palmdale Motel Management, Inc. may be served through its registered agent for service Kanak Patel located at 130 E Palmdale Blvd., Palmdale, CA 93550. Upon information and belief, at relevant times, it owned, operated, controlled, and/or managed the subject Knights Inn. Palmdale Motel Management, Inc. "Palmdale" or as "Franchisee Defendant."

## JURISDICTION AND VENUE

15. This Court has jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the TVPRA.

16. This Court has personal jurisdiction over all Defendants. Each Defendant is, and at all relevant times herein was, a citizen of and/or authorized to conduct business in the State of California and/or conducted such business within the State of California, including the Northern District of California and including the actions, dealings, and/or omissions that caused or contributed to the harm giving rise to this action.

17. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to this claim occurred in this judicial district.

## STATEMENT OF FACTS

**I.    Jane Doe (M.S.H.) was a Victim of Unlawful Sex Trafficking at a Hotel Owned, Operated, Managed and Controlled by Defendants.**

18. Jane Doe (M.S.H.) was trafficked through force and coercion by her trafficker to engage in numerous commercial sex acts. Jane Doe (M.S.H.) was trafficked continuously from January 1, 2013 to December 31, 2015, including

PEIFFER WOLF CARR KANE
CONWAY & WISE
555 Montgomery Street, Suite 820
Francisco, California 94111
415.766.3544 phone • 415.840.9435 fax

PLAINTIFF'S ORIGINAL COMPLAINT AND DEMAND FOR JURY TRIAL

specifically from May 1, 2014 through September 30, 2014 at the Knights Inn located at 130 E Palmdale Blvd., Palmdale, California 93550.

19.    Jane Doe (M.S.H.)'s trafficking repeatedly occurred in rooms of this Knights Inn location and was facilitated by Wyndham and Franchisee Defendant.

## II.    The Hotel Industry's Role in Sex Trafficking and Defendants' Knowledge of the Problem.

20.    The widely known and pervasive relationship between sex trafficking and the hotel industry necessarily shapes what G6 Defendants knew or should have known regarding the trafficking at their hotel properties, including the trafficking of Jane Doe (M.S.H.).

21.    Today, sex slavery is pervasive in the United States, and hotels are the primary place where it happens.[3] For years, sex traffickers have "been able to reap enormous profits with little risk when attempting to operate within hotels."[4] In 2014, 92 percent of calls to the Human Trafficking Hotline involved reports of sex trafficking taking place at hotels.[5] Hotels have been found to account for over 90 percent of commercial exploitation of children.[6]

---

[3] "This is not only a dominant issue, it's an epidemic issue." *See* Jaclyn Galucci, *Human Trafficking is an Epidemic in the U.S. It's Also Big Business*, Fortune, April 2019, at https://fortune.com/2019/04/14/human-sex-trafficking-usslavery/ citing Cindy McCain, who chairs the McCain Institute's Human Trafficking Advisory Council. "It's also something that is hiding in plain sight. It's everywhere—it's absolutely everywhere." *Id*

[4] *See Human Trafficking in the Hotel Industry*, Polaris Project, February 10, 2016, at https://polarisproject.org/blog/2016/02/human-trafficking-in-the-hotel-industry/.

[5] Michele Sarkisian, *Adopting the Code: Human Trafficking and the Hospitality Industry*, CORNELL HOSPITALITY REPORT, 15(15), 3-10 (2015), available at: https://humantraffickingsearch.org/wp-content/uploads/2019/05/Adoptingthecode.report.cornell.pdf

[6] Erika R. George & Scarlet R. Smith, *In Good Company: How Corporate Social Responsibility Can Protect Rights and Aid Efforts to End Child Sex Trafficking in Modern Slavery*, 46 N.Y.U. J. INT'L L. & POL. 55, 92 (2013).

PEIFFER WOLF CARR KANE
CONWAY & WISE
555 Montgomery Street, Suite 820
Francisco, California 94111
415.766.3544 phone • 415.840.9435 fax

22.    Because of this link between hotels and sex trafficking, government agencies and non-profits have devoted significant efforts to educating the hotel industry, including Defendants, on best practices for identifying and responding to sex trafficking.[7]

23.    Multiple agencies and organizations who actively combat sex trafficking, including the United States Department of Homeland Security, the National Center for Missing and Exploited Children, the Polaris Project, the Texas Attorney General, Love 146, and EPCAT, among others, have established recommended policies and procedures for recognizing the signs of sex trafficking.[8]

24.    Some of the recommended policies and procedures intended to reduce or eliminate sex trafficking, which Defendants are aware or should be aware of, include learning to identify warning signs and indicators of sex trafficking, including but not limited to:

    a.   Individuals show signs of fear, anxiety, tension, submission, and/or nervousness;

---

[7] *See, e.g.*, Department of Homeland Security, *Blue Campaign Toolkit*, available at: https://www.dhs.gov/sites/default/files/publications/blue-campaign/toolkits/hospitality-toolkit-eng.pdf; National Center for Missing & Exploited Children, *Child Sex Trafficking Overview*, available at: https://www.missingkids.org/content/dam/missingkids/pdfs/CST%20Identification%20Resource.pdf; Love 146, *Red Flags for Hotel and Motel Employees*, https://love146.org/wp-content/uploads/2017/04/Hospitality-Red-Flag-and-Reporting-Love146.pdf; Texas Attorney General, Human Trafficking Red Flags, available at: https://www2.texasattorneygeneral.gov/files/human_trafficking/human_trafficking_red_flags_handout.pdf .

[8] United States Department of Homeland Security Blue Campaign – One Voice. One Mission. End Human Trafficking, https://www.dhs.gov/sites/default/files/publications/blue-campaign/toolkits/hospitality-toolkit-eng.pdf (last visited April 13, 2023);National Center for Missing and Exploited Children, https://www.missingkids.org/theissues/trafficking#riskfactors (last visited April 13, 2023); Love 146, *Red Flags for Hotel & Motel Employees*, https://love146.org/wp-content/uploads/2017/04/Hospitality-Red-Flag-and-Reporting-Love146.pdf (last visited April 13, 2023); Texas Attorney General, *Human Trafficking Red Flags*, https://www2.texasattorneygeneral.gov/files/human_trafficking/human_trafficking_red_flags_handout.pdf (last visited April 13, 2023).

PEIFFER WOLF CARR KANE CONWAY & WISE
555 Montgomery Street, Suite 820
Francisco, California 94111
415.766.3544 phone • 415.840.9435 fax

PLAINTIFF'S ORIGINAL COMPLAINT AND DEMAND FOR JURY TRIAL

b.  Individuals show signs of physical abuse, restraint, and/or confinement;

c.  Individuals exhibit evidence of verbal threats, emotional abuse, and/or being treated in a demeaning way;

d.  Individuals show signs of malnourishment, poor hygiene, fatigue, sleep deprivation, untreated illness, injuries, and/or unusual behavior;

e.  Individuals lack freedom of movement or are constantly monitored;

f.  Individuals avoid eye contact and interaction with others;

g.  Individuals have no control over or possession of money or ID;

h.  Individuals dress inappropriately for their age or have lower quality clothing compared to others in their party;

i.  Individuals have few or no personal items—such as no luggage or other bags;

j.  Individuals appear to be with a significantly older "boyfriend" or in the company of older males;

k.  A group of girls appears to be traveling with an older female or male;

l.  A group of males or females with identical tattoos in similar locations. This may indicate "branding" by a trafficker;

m. Drug abuse or frequent use of "party drugs" such as GHB, Rohypnol, Ketamine, MDMA (Ecstasy), Methamphetamines, Cocaine, and Marijuana;

n.  Possession of bulk sexual paraphernalia such as condoms or lubricant;

o.  Possession or use of multiple cell phones; and

p.  Possession or use of large amounts of cash or pre-paid cards.[9]

25.  The signs of sex trafficking in a hotel environment follow well-established patterns and can easily be detected by appropriately trained staff. Tool kits specific to the hotel industry have been developed, which help hotel staff in every

PEIFFER WOLF CARR KANE
CONWAY & WISE
555 Montgomery Street, Suite 820
Francisco, California 94111
415.766.3544 phone • 415.840.9435 fax

[9] *Id.*

PFEIFFER WOLF CARR KANE
CONWAY & WISE
555 Montgomery Street, Suite 820
Francisco, California 94111
415.766.3544 phone • 415.840.9435 fax

position identify and respond to signs of sex trafficking.[10]  From check-in to check-out, there are indicators that traffickers and their victims routinely exhibit during their stay at a hotel.

26.    The relationship between a pimp and a prostitute is inherently coercive, and the United States Department of Justice and other agencies and organizations have recognized that most individuals involved in prostitution are subject to force, fraud, or coercion.[11] It is also well understood that "prostitution," "sex trafficking," and "child sex trafficking" involve a single common denominator, the exchange of sex for money.

27.    The definition of sex trafficking in the TVPRA under 18 U.S.C. §1591(a)(1) incorporates the definition of commercial sex act. Defendants understood the practical and legal association between commercial sex and sex trafficking in a hotel environment. Thus, Defendants knew or should have known that signs of commercial sex (prostitution) activity in their hotels were in fact signs of sex trafficking.[12]

28.    All Defendants were aware or should have been aware of these signs of sex trafficking when operating, controlling, and managing their hotel properties, when enacting and enforcing policies and procedures applicable to those hotels and when training, educating, and supervising the staff of that hotel.

---

[10] Department of Homeland Security, *Blue Campaign Toolkit*, https://www.dhs.gov/sites/default/files/publications/blue-campaign/toolkits/hospitality-toolkit-eng.pdf.

[11] *See, e.g.*, *A National Overview of Prostitution and Sex Trafficking Demand Reduction Efforts, Final Report*, https://www.ojp.gov/pdffiles1/nij/grants/238796.pdf; *Prostitution and Trafficking in Women: An Intimate Relationship*, https://www.ojp.gov/ncjrs/virtual-library/abstracts/prostitution-and-trafficking-women-intimate-relationship.

[12] *Id.*

PLAINTIFF'S ORIGINAL COMPLAINT AND DEMAND FOR JURY TRIAL

29. The most effective weapon against sexual exploitation and human trafficking is education and training.[13]  As ECPAT concluded:

> The hospitality industry is in a unique position to identify and report human trafficking due to its perceived anonymity. Traffickers believe they can go unnoticed while exploiting victims across the globe in hotels— ranging from budget properties to luxury resorts. From check-in to check-out, there are a number of indicators victims and exploiters exhibit during the time they are on a hotel property.[14]

30. This same conclusion is echoed by others who seek to eliminate sex trafficking in the hospitality industry, including the American Hotel Lodging Association: "Hotel employees who have undergone training are more aware of trafficking when it happens – and are more willing to report it – than those who have not been trained.[15]  In reference to companies like the Defendants, ECPAT observed: "If they do nothing to raise awareness or to prevent child trafficking, they risk becoming an indirect and unintentional conduit for the abuse that takes place."

31. Given the prevalence of human trafficking in hotels and the abundance of information about how franchisors, owners, operators and hotel employees can identify and respond to this trafficking, it has become apparent that the decision of a hotel chain to continue generating revenue from traffickers without taking necessary steps to identify and prevent trafficking in its hotels is a conscious decision to financially benefit by supporting and facilitating unlawful sex trafficking.

---

[13] Polaris, *Recognizing Human Trafficking*, https://polarisproject.org/recognizing-human-trafficking/ (last visited April 13, 2023).

[14] ECPAT USA, *Training for Hotel Associates*, https://www.ecpatusa.org/hotel-training (last visited April 13, 2023).  *See also* Carolin L. et al., *Sex Trafficking in the Tourism Industry*, J. Tourism Hospit. (2015), https://www.longdom.org/open-access/sex-trafficking-in-the-tourism-industry-2167-0269-1000166.pdf.

[15] AHLA, *Free Online Training*, https://www.ahla.com/issues/human-trafficking (last visited April 13, 2023).

PLAINTIFF'S ORIGINAL COMPLAINT AND DEMAND FOR JURY TRIAL

PFEIFFER WOLF CARR KANE
CONWAY & WISE
555 Montgomery Street, Suite 820
Francisco, California 94111
415.766.3544 phone • 415.840.9435 fax

32.     Each of the G6 Defendants had a responsibility to adopt, implement, and adequately enforce policies to avoid facilitating sex trafficking and to train hotel staff to identify and respond to "red flags" of sex trafficking.

33.     Unfortunately for Jane Doe (M.S.H.), the promises made by the G6 Defendants have proven empty. Defendants have failed, at all levels, to take appropriate action in response to their knowledge of widespread and ongoing human trafficking in their hotels. Instead, they have continued financially benefiting by providing venues for the sexual exploitation of victims like Jane Doe (M.S.H.).

**III.   Sex Trafficking Has Long Been Prevalent at Hilton Branded Properties, and Defendants Have Known About It.**

34.     Defendants' actual knowledge is *not* limited to a general awareness of the problem of sex trafficking in the hotel industry. Each of the Defendants has known, since well before Jane Doe (M.S.H.)'s trafficking, that sex trafficking was ongoing and widespread at Hilton branded properties including the subject properties named herein.

**a. Sex Trafficking at Wyndham Branded Hotels was well Known by Defendants.**

35.     Upon information and belief, each of the Defendants monitored criminal activity occurring at Wyndham branded hotels and were aware of activity indicating commercial sex, sex trafficking and/or related crimes occurring at those branded hotels, including the specific hotel property where Jane Doe (M.S.H.) was trafficked.

36.     Scores of news stories from across the US highlight Wyndham's facilitation of sex trafficking and certainly establish that Defendants knew, or should have known, of the use of Wyndham hotels for sex trafficking.

37.     Information that has become public through news stories establishes the entrenched and pervasive nature of Wyndham's role in providing a venue where sex trafficking has continued unabated for years. Among notable press involving the frequent use of Wyndham hotels for illegal activity, the following was noted:

PEIFFER WOLF CARR KANE
CONWAY & WISE
555 Montgomery Street, Suite 820
Francisco, California 94111
415.766.3544 phone • 415.840.9435 fax

- "Man arrested in Metairie on human trafficking charges; accused of forcing North Carolina teens into prostitution"[16]

- "Federal officials catch, arrest man alleged to have prostituted Jupiter girl, 14"[17]

- "Hagerstown man charged with trafficking of two teenage girls"[18]

38.    Ultimately, several hundred traffickers involved with hundreds of victims have been prosecuted by state and federal law enforcement agencies for sex trafficking and forced prostitution out of Wyndham branded properties.

39.    Based on information and belief, Wyndham managed and monitored on-line reviews of Wyndham hotel locations:

- A Booking.com review from September 29, 2021states: "Negative: The cops pulled us over after we left the parking lot. They told us that this motel was known fir [sic] drugs and sex rings"[19]

- A Google.com review from 2018 states: "Problem I have is owner. He treats women very poorly and makes his underage children work there. A lot of prostitution that I'm sure owner aware of. I seen him talking to this guy that has checked in 3 different times with 3 different [sic]"[20]

[16] *Man arrested in Metairie on human trafficking charges; accused of forcing North Carolina teens into  prostitution*, NOLA.com (Jul 20, 2010),
Man arrested in Metairie on human trafficking charges; accused of forcing North Carolina teens into prostitution | Crime/Police | nola.com

[17] *Federal officials catch, arrest man alleged to have prostituted Jupiter girl, 14*, The Palm Beach Post (March 31, 2012)
https://www.palmbeachpost.com/story/news/crime/2012/02/08/federal-officials-catch-arrest-man/7283405007/

[18] *Hagerstown man charged with trafficking of two teenage girls,* Herald Mail Media (July 1, 2015)
Hagerstown man charged with trafficking of two teenage girls (heraldmailmedia.com)

[19] https://www.booking.com/hotel/us/days-inn-clarksville-tn.html
[20]https://www.google.com/travel/hotels/Days%20Inn%20127%20W%20Byers%20Ave,%20New%20Stanton,%20PA%2015672%20google/entity/CgoIiJGz_YeevpIDEAE/prices?g2lb=2502548,2503771,2503781,4258168,4270442,4284970,4291517,4306835,4429192,4515404,4597339,4723331,4731329,4757164,4778035,4814050,4821091,4861688,4864715,4874190,4886082,4886480,4893075,4902277,4905351,4926165,4926489,4931360,4936396,4937897,4940607,47061553&hl=en-US&gl=us&ssta=1&q=Days+Inn+127+W+Byers+Ave,+New+Stanton,+PA+15672+google&grf=EmMKLAgOEigSJnIkKiIKBwjnDxAEGBASBwjnDxAEGBEgADAeQMoCSgcI5w8QARgfCjMIDBIvEi2yASoSKAomCiQweDg4MzRkOTA1ZjM5OTA5YmQ6MHgzMjRmRmOGYwN2ZhY2M4ODg&rp=EIiRs_2Hnr6SAxCIkbP9h56-kgM4AkAASAHAAQI&ictx=1

PEIFFER WOLF CARR KANE
CONWAY & WISE
555 Montgomery Street, Suite 820
Francisco, California 94111
415.766.3544 phone • 415.840.9435 fax

- A Trip Advisor review from June 20, 2014 states: "I witnessed what seemed to be prostitution in and out of the hotel. A huge party went on "in the hallways" well into the night with full tilt hip hop music. The following morning I experienced a naked woman being attacked in the hallway and had to intervene when not one other hotel security, management came to help."[21]

40.     This sampling of news stories, reviews, and other public information establishes that, at the time Jane Doe (M.S.H.) was trafficked at the subject properties, Wyndham knew or should have known that:

a.  There was widespread and ongoing sex trafficking occurring at Wyndham branded properties;

b.  Sex trafficking was a brand-wide problem for Wyndham originating from management level decisions at their corporate offices in Carrollton, Texas;

c.  Wyndham franchisees and hotel staff were not taking reasonable steps to identify, report, and respond to known or probable sex trafficking occurring at their hotel properties and were facilitating sex trafficking at the branded hotel properties;

d.  Wyndham's efforts, if any, to stop facilitating sex trafficking in their branded properties were not effective; and

e.  Wyndham and its franchisees were earning revenue by providing venues where widespread and ongoing sex trafficking was occurring.

41.     Despite the mounting evidence that sex trafficking at its properties was ongoing and growing, Wyndham chose to earn revenue by continuing conduct that they knew or should have known would facilitate that trafficking.

---

[21] https://www.tripadvisor.com/Hotel_Review-g60097-d1571552-Reviews-Days_Inn_Suites_by_Wyndham_Milwaukee-Milwaukee_Wisconsin.html

PEIFFER WOLF CARR KANE
CONWAY & WISE
555 Montgomery Street, Suite 820
Francisco, California 94111
415.766.3544 phone • 415.840.9435 fax

PLAINTIFF'S ORIGINAL COMPLAINT AND DEMAND FOR JURY TRIAL

**b. Defendants had actual and constructive knowledge of widespread and ongoing sex trafficking at the Avatar Hotel.**

42.    Wyndham were specifically aware that sex trafficking was widespread and ongoing at the subject Knights Inn location.

43.    Internet reviews for the subject Knights Inn location, which upon information and belief Wyndham and Franchisee Defendant manage and monitor, show the pervasiveness of sex trafficking before and well after Jane Doe (M.S.H.) was trafficked. For example:

- A 2014 review for the subject Knights Inn states, "We were on a tight budget and that is the only reason we didn't leave when the pimp knocked on our door in the middle of the day saying he had the wrong room…"[22]

- A 2015 review for the subject Knights Inn states, "…The typical guests include: longterm guests, gang members, prostitutes, drifters, and alcoholics."[23]

- A 2015 review of the subject Knights Inn states, "…In the 40 or so minutes it took for "security" to bring us more towels, the standing water seeped through the bathroom wall onto the carpet and when my fiance got out of bed the next morning, his socks got soaking wet. When we realized it was the dirty toilet water, I came unglued. I went to the front desk and began complaining and the 2 ladies there were beyond rude. I swear I don't know how these people can operate a business with their horrible attitudes! They claimed that I was not a "registered guest" and that just because my fiance invited me into his room didn't mean that I had any right to make a complaint. They implied I was a prostitute and

PEIFFER WOLF CARR KANE
CONWAY & WISE
555 Montgomery Street, Suite 820
Francisco, California 94111
415.766.3544 phone • 415.840.9435 fax

---

[22] https://www.tripadvisor.com/Hotel_Review-g32848-d79130-Reviews-Knights_Inn_Palmdale-Palmdale_California.html

[23] https://www.yelp.com/biz/knights-inn-palmdale-palmdale

PLAINTIFF'S ORIGINAL COMPLAINT AND DEMAND FOR JURY TRIAL

was drunk - telling another customer who was checking in 'look at her eyes... she's drunk!'…"[24]

- A 2016 review for the subject Knights Inn states, "I had a not so pleasant stay here at the Knights Inn in Palmdale. Rooms were cheap but very dirty. The towels looked like they used to be cleaning rags for the maids and the bed definitely had bed bugs in it. It seems like a lot of drug addicts and hookers stay here. I lost count of how many I seen here in my short stay. The security at this motel is a joke. I seen him try to stop a fight in the parking lot between to guest and he ended up running away…"[25]

- A 2017 review for the subject Knights Inn states "…I've never seen anything like this place. Hookers everywhere was in my room for about an hour before the walls started shaking, the tv on the wall almost fell off when the ppl above us then started."[26]

44.   Traffickers, including Jane Doe (M.S.H.)'s trafficker, repeatedly chose to use these subject Knights Inn location for their sex trafficking activity. As such, Wyndham and Franchisee Defendant also knew or should have known about the pervasive sex trafficking at the Knights Inn location based on obvious indicators of this activity.

45.   Upon information and belief and based on hotel reviews and records of law-enforcement calls, there were multiple trafficking victims exploited at the subject Knights Inn location named herein prior to Jane Doe (M.S.H.)'s trafficking who exhibited "red flags" of trafficking that were observed by hotel staff and management, including paying with cash or prepaid cards, having high volumes of men who not

---

[24] https://www.yelp.com/biz/knights-inn-palmdale-palmdale
[25] https://www.yelp.com/biz/knights-inn-palmdale-palmdale
[26] https://www.yelp.com/biz/knights-inn-palmdale-palmdale

PEIFFER WOLF CARR KANE
CONWAY & WISE
555 Montgomery Street, Suite 820
Francisco, California 94111
415.766.3544 phone • 415.840.9435 fax

registered guests in and out of their room at unusual times, arriving with few possessions for extended stays, and other signs consistent with the "red flags" of trafficking identified above. Trafficking has a significant effect on its victims, and, upon information and belief, there were obvious "red flags" of trafficking apparent from the appearance, demeanor, and restricted movements of these victims, as well as the nature of these victims' interactions with their traffickers and others, all of which provided notice that these victims were being subject to violence, coercion, control, and exploitation.

46.    All knowledge from the staff at these subject Knights Inn location is imputed to Wyndham. Wyndham knew about this widespread and ongoing trafficking at this Knights Inn location, including the trafficking of Jane Doe (M.S.H.), through the direct observations of hotel staff, including management-level staff.

47.    Upon information and belief, Wyndham knew or should have known about the widespread trafficking at the subject Knights Inn location referenced herein, based on:

    a.  The obligation of hotel staff and hotel management to report suspected criminal activity including sex trafficking to Wyndham;

    b.  The Defendants' regular monitoring of online reviews;

    c.  The Defendants' collection and monitoring of customer surveys and complaints;

    d.  The Defendants' regular inspections of the hotel property;

    e.  Information provided to Defendants by law enforcement; and

    f.  Other sources of information available to Defendants.

48.    Upon information and belief, under Wyndham's protocols, which on their face required hotel staff and management to report suspected criminal activity to Wyndham, hotel staff and management were required to report numerous instances of suspected sex trafficking to Wyndham prior to Jane Doe (M.S.H.)'s trafficking

PEIFFER WOLF CARR KANE CONWAY & WISE
555 Montgomery Street, Suite 820
Francisco, California 94111
415.766.3544 phone • 415.840.9435 fax

based on the numerous "red flags" exhibited by the victims who were exploited at the subject Knights Inn location.

**c.  Defendants knew Jane Doe (M.S.H.) was being trafficked at these subject Knights Inn location because of the apparent and obvious "red flags" of sex trafficking.**

49.     During the period that Jane Doe (M.S.H.) was trafficked at the subject Knights Inn location named herein, there were obvious signs that her traffickers were engaged in sex trafficking:

a.  The hotel rooms in which she was trafficked were frequently paid for with cash or prepaid cards;

b.  Other girls were trafficked at the same hotel at the same time as Jane Doe (M.S.H.);

c.  Even though Jane Doe (M.S.H.) and her traffickers would stay for multiple days at a time, housekeeping was kept away by using the "Do Not Disturb" door hanger;

d.  Housekeeping staff was prevented from entering the room for regular cleaning, towel exchange and other standard room services;

e.  The traffickers were often present with Jane Doe (M.S.H.) at check in and would linger around the hotel or in the parking lot while she was with a john;

f.  There was heavy foot traffic in and out of Jane Doe (M.S.H.)'s room involving men who were not hotel guests;

g.  Jane Doe (M.S.H.) had at least ten (10) johns every day. These individuals entered and left at unusual hours and were present at the hotel for brief periods of time; and

h.  Other obvious signs of trafficking consistent with the modus operandi of her traffickers and which included well known "red flags" for trafficking in a hotel.

PEIFFER WOLF CARR KANE
CONWAY & WISE
555 Montgomery Street, Suite 820
Francisco, California 94111
415.766.3544 phone • 415.840.9435 fax

PLAINTIFF'S ORIGINAL COMPLAINT AND DEMAND FOR JURY TRIAL

50.     Based upon information and belief, multiple employees at the subject Knights Inn location named herein, including management-level employees, observed, or were made aware of these obvious signs of trafficking while acting within the scope and course of their employment.

51.     As such, Wyndham knew or was willfully blind to the fact that Jane Doe (M.S.H.) was being trafficked at the subject Wyndham properties.

52.     Given these obvious signs, Wyndham knew or should have known about the trafficking of Jane Doe (M.S.H.) based on its policy or protocol that required hotel staff to report suspected criminal activity including sex trafficking.

## IV.     Defendants actively facilitated sex trafficking at these subject Knights Inn location, including the trafficking of Jane Doe (M.S.H.).

53.     Defendants had both actual and constructive knowledge of the trafficking of Jane Doe (M.S.H.) at this Knights Inn location because the trafficking was the direct result of Wyndham and Franchisee facilitating her trafficking at the Knights Inn location.

### a.  Franchisee Defendant facilitated the trafficking of Jane Doe (M.S.H.).

54.     Franchisee Defendant is responsible for the acts, omissions, and knowledge of all employees of this Knights Inn location when operating the hotel because these acts and omissions were committed in the course and scope of employment, because Franchisee Defendant ratified these acts and omissions, and because Franchisee Defendant failed to exercise reasonable care with regard to the hiring, training, and supervision of these employees given the specific risks, known to Franchisee Defendant, of sex trafficking occurring at this Knights Inn location branded locations including the subject locations.

55.     Despite having actual or constructive knowledge of widespread and ongoing sex trafficking at the subject Knights Inn location, Franchisee Defendant continued renting rooms to these traffickers, including the rooms used to sexually exploit victims.

PEIFFER WOLF CARR KANE
CONWAY & WISE
555 Montgomery Street, Suite 820
Francisco, California 94111
415.766.3544 phone • 415.840.9435 fax

56.     Franchisee Defendant knew or was willfully blind to the fact that Jane Doe (M.S.H.) was being trafficked and, despite this, benefited from continued association with her traffickers by providing them a venue in the form of hotel rooms and related services, to facilitate Jane Doe (M.S.H.)'s sexual exploitation.

57.     Franchisee Defendant also facilitated widespread trafficking at their subject Knights Inn location, including the trafficking of Jane Doe (M.S.H.), in ways including:

a. Failing to adequately enforce  policies, procedures and practices for hiring, training, supervising, managing, and disciplining front-line staff regarding issues related to on-premises crime and specifically human trafficking;

b. choosing not to report known or suspected criminal activity including sex trafficking to law enforcement;

c. implicitly encouraging the activities of traffickers by creating an environment where they did not need to incur the burden of taking significant steps to conceal their activities but, instead, could operate without concern for detection or interference by the hotel staff.

58.     Through these actions, the Franchisee Defendant formed a continuous business relationship with traffickers and encouraged them to return to the subject Knights Inn location to exploit victims including Jane Doe (M.S.H.).

**a. Wyndham facilitated the trafficking of Jane Doe (M.S.H.).**

59.     Wyndham is responsible for the acts, omissions, and knowledge of all employees of this Knights Inn location when operating the hotel because these acts and omissions were committed in the course and scope of employment, because Wyndham ratified these acts and omissions, and because Wyndham failed to exercise reasonable care with regard to the hiring, training, and supervision of these employees given the specific risks, known to Wyndham, of sex trafficking occurring at these Wyndham branded locations including the subject locations.

60.     Despite having actual or constructive knowledge of widespread and ongoing sex trafficking at the subject Knights Inn location, Wyndham continued renting rooms to these traffickers, including the rooms used to sexually exploit victims.

61.     Wyndham knew or was willfully blind to the fact that Jane Doe (M.S.H.) was being trafficked and, despite this, benefited from continued association with her traffickers by providing them a venue in the form of hotel rooms and related services, to facilitate Jane Doe (M.S.H.)'s sexual exploitation.

62.     Wyndham also facilitated widespread trafficking at their subject Knights Inn location, including the trafficking of Jane Doe (M.S.H.), in ways including:

    a. allowing inappropriate and inadequate practices for hiring, training, supervising, managing, and disciplining front-line staff regarding issues related to human trafficking;

    b. inadequate and inadequately enforced sex trafficking notice and training for hotel staff;

    c. choosing not to report known or suspected criminal activity including sex trafficking according to reasonable practices, industry standards, and/or applicable franchisor policies and procedures; and

    d. implicitly encouraging the activities of traffickers by creating an environment where they did not need to incur the burden of taking significant steps to conceal their activities but, instead, could operate without concern for detection or interference by the hotel staff.

63.     Despite having actual or constructive knowledge of widespread and ongoing sex trafficking at the Avatar Hotel, Hilton Defendants continued renting rooms to these traffickers, including the rooms used to sexually exploit victims.

64.     Hilton Defendants knew or were willfully blind to the fact that Jane Doe (M.S.H.) was being trafficked and, despite this, benefited from continued association

PEIFFER WOLF CARR KANE
CONWAY & WISE
555 Montgomery Street, Suite 820
Francisco, California 94111
415.766.3544 phone • 415.840.9435 fax

PFEIFFER WOLF CARR KANE
CONWAY & WISE
555 Montgomery Street, Suite 820
Francisco, California 94111
415.766.3544 phone • 415.840.9435 fax

with her traffickers by providing them a venue in the form of hotel rooms and related services, to facilitate Jane Doe (M.S.H.)'s sexual exploitation.

65.    Hilton Defendants also facilitated widespread trafficking at the Avatar Hotel, including the trafficking of Jane Doe (M.S.H.), in ways including:

    a. allowing inappropriate and inadequate practices for hiring, training, supervising, managing, and disciplining front-line staff regarding issues related to human trafficking;

    b. inadequate and inadequately enforced sex trafficking notice and training for hotel staff;

    c. choosing not to report known or suspected criminal activity including sex trafficking according to reasonable practices, industry standards, and/or applicable franchisor policies and procedures; and

    d. implicitly encouraging the activities of traffickers by creating an environment where they did not need to incur the burden of taking significant steps to conceal their activities but, instead, could operate without concern for detection or interference by the hotel staff.

66.    Upon information and belief, Wyndham participated directly in aspects of the operation of the subject Wyndham that influenced whether and to what extent trafficking occurred at the hotels, including but not limited to the trafficking of Jane Doe (M.S.H.), as follows:

    a. Wyndham has publicly assumed responsibility and control over the human trafficking response of all Wyndham properties, including design and implementation of practices to prevent trafficking, safety and security procedures, employee and franchisee education, training, and response, partnership with external organizations, and advocacy;

    b. Wyndham retained control over when its branded hotels would share information with law enforcement and when law enforcement would be contacted about suspected criminal activity in Wyndham branded hotels;

c. Wyndham retained control over the response to trafficking by creating a reporting hotline for hotel staff and franchisees to report suspected human trafficking to Wyndham. Wyndham determined when issues should be escalated to the National Human Trafficking Hotline or law enforcement;

d. Wyndham retained control over determining which hotels needed additional training or other resources based on a high risk of human trafficking and other related criminal activity;

e. Wyndham expressly retained control to terminate hotel staff and/or a franchising agreement based on the response to human trafficking;

f. Wyndham retained control, at the brand-wide level, over training on how to spot the signs of and help prevent human trafficking. Wyndham determined whether the training is provided, when it is provided, the content of the training, how the training is delivered, who receives the training, and the consequences if someone does not participate in the training or fails to follow such training;

g. Although they delayed making any reasonable effort to do so, Wyndham acknowledge that they retain control to adopt requirements for franchised hotels specifically designed to prevent human trafficking and other criminal activity;

h. Wyndham maintain a Safety & Security Team and a Critical Incident Rapid Response Team that are charged with investigating and responding to potential criminal incidents at all Wyndham properties, including suspected trafficking incidents;

i. Wyndham is responsible for adopting, enforcing, and monitoring policies and codes of conduct related to human trafficking at the subject Knights Inn location;

PEIFFER WOLF CARR KANE
CONWAY & WISE
555 Montgomery Street, Suite 820
Francisco, California 94111
415.766.3544 phone • 415.840.9435 fax

PLAINTIFF'S ORIGINAL COMPLAINT AND DEMAND FOR JURY TRIAL

PFEIFFER WOLF CARR KANE
CONWAY & WISE
555 Montgomery Street, Suite 820
Francisco, California 94111
415.766.3544 phone • 415.840.9435 fax

j.  Wyndham maintained control over all details of the terms under which franchised hotels, including the subject Knights Inn location, offered internet services to customers, including dictating the software, hardware, and service provider to be used, setting all policies about use and restrictions on use, and actively collecting and monitoring guest internet usage data. Wyndham dictated whether sites frequently used to solicit clients for sex trafficking victims would be accessible through the internet at the subject Knights Inn location;

k.  Wyndham retained control over the setting, supervision, overseeing, and enforcement of detailed policies and protocol for housekeeping services at the subject Knights Inn location, including policies for how often rooms must be entered, how to respond to guest refusals of entry into rooms, and steps to monitor guest safety issues through housekeeping services; and

l.  Wyndham collected, maintained, and analyzed detailed data regarding housekeeping services at the subject Knights Inn location, including trends that would reveal patterns consistent with human trafficking.

67.  Wyndham directly participated in and retained day-to-day control over renting rooms at the subject Knights Inn location by, among other things:

a.  Wyndham controlled all details of the guest reservation, check-in, and payment processes through management and control over all systems used for those processes and adoption of detailed and specific policies governing the means and methods used for each of these processes;

b.  Wyndham directly made reservations for rooms at the subject Knights Inn location and accepted payment for those rooms through a central reservation system that they controlled and operated. Wyndham could reserve rooms and accept payments without requiring franchisee approval or involvement;

PEIFFER WOLF CARR KANE
CONWAY & WISE
555 Montgomery Street, Suite 820
Francisco, California 94111
415.766.3544 phone • 415.840.9435 fax

c.  Wyndham established and maintained control over a brand-wide "do not rent" system. Wyndham set all policies related to use of this system and dictated the day-to-day details of reservations at the subject Knights Inn location through detailed policies that it established regarding use of this "do not rent" system;

d.  Wyndham controlled room rates, required discounts, mandatory fees, and rewards program;

e.  Wyndham controlled and restricted the ability of franchisee and staff to refuse or cancel a reservation;

f.  Wyndham controlled and oversaw policies and procedures regarding check-in, payment, and identity verification procedures;

g.  Wyndham collected, retained, monitored, and analyzed detailed data about every guest who stayed at the subject Knights Inn location;

h.  Wyndham established detailed policies and protocol that dictated, step-by-step, everything that would happen from the time a guest arrived at the subject Knights Inn location until they entered their guest room. This included operational directives regarding payment methods, identification requirements, the number of guests that could be in each room and whether information needed to be collected for each guest, what questions hotel staff should and should not ask, and other matters related to check-in; and

i.  Wyndham required franchisees to use Wyndham's property management system, which was owned, maintained, controlled, and operated by Wyndham, for virtually all aspects of hotel operations regarding room reservations and payment.

68.  Despite having actual or constructive knowledge of widespread and ongoing sex trafficking at the subject Knights Inn location named herein, Wyndham

PLAINTIFF'S ORIGINAL COMPLAINT AND DEMAND FOR JURY TRIAL

continued renting rooms to traffickers, including the rooms used to sexually exploit victims, including Jane Doe (M.S.H.).

69.    Wyndham knew or should have known that Jane Doe (M.S.H.) was being trafficked and, despite this, benefited from continued association with her traffickers by providing them hotel rooms and related services to facilitate Jane Doe (M.S.H.)'s sexual exploitation.

70.    Upon information and belief, despite having actual or constructive knowledge of the ongoing sex trafficking at the subject Knights Inn location, Wyndham continued participating in a venture at these hotels, with its franchisees and hotel staff, in a way that it knew or should have known would lead to additional sex trafficking at the hotels, including but not limited to by the following:

    a.  Wyndham adopted inappropriate and inadequate practices for selecting, training, supervising, managing, and disciplining franchisees and hotel staff regarding issues related to human trafficking;

    b.  Wyndham provided inadequate training on issues related to human trafficking and unreasonably delayed providing training;

    c.  Wyndham adopted a safety and security budget and safety and security practices that were clearly insufficient considering the known problem of sex trafficking at Wyndham properties;

    d.  Wyndham implicitly approved decisions by franchisees and hotel staff not to report or respond to criminal activity including sex trafficking appropriately;

    e.  Wyndham continued to use policies, protocols, and practices that had been shown to lead to widespread trafficking at the subject Knights Inn location;

    f.  Wyndham attracted traffickers by affirmatively creating a favorable venue where access was easy, risks of interference were low, and traceability was minimal;

PEIFFER WOLF CARR KANE
CONWAY & WISE
555 Montgomery Street, Suite 820
Francisco, California 94111
415.766.3544 phone • 415.840.9435 fax

g. Despite having specific knowledge of policies that would significantly reduce sex trafficking at its branded locations including the subject Knights Inn location, Wyndham declined to implement policies that would likely have the effect of reducing its sex-trafficking related profits or that would require publicly acknowledging the ongoing problem of sex trafficking at its properties;

h. Wyndham willfully delayed taking obvious and apparent steps to stop facilitating sex trafficking, which they had the ability and responsibility to take sooner;

i. Wyndham allowed traffickers to reserve rooms using cash, which provided relative anonymity and non-traceability; and

j. Wyndham provided traffickers with access to internet services in a manner that Wyndham knew or should have known would be used to facilitate trafficking by promoting commercial sex services online.

71. If Wyndham had exercised reasonable diligence when operating their Wyndham properties and in the areas where it retained control, Wyndham would have prevented the subject Knights Inn location from being used to facilitate widespread and ongoing sex trafficking, including the trafficking of Jane Doe (M.S.H.). Instead, Wyndham engaged in the course of conduct that affirmatively facilitated widespread and ongoing sex trafficking, including the trafficking of Jane Doe (M.S.H.).

72. Wyndham should have known about Jane Doe (M.S.H.).'s trafficking because it retained control over the training of the staff of the subject Knights Inn location regarding human trafficking and ways to detect and respond to signs of human trafficking. Effective training and education are the most important tools to prevent use of hotel facilities for sexual exploitation and human trafficking. If Wyndham had exercised reasonable diligence in providing training to hotel staff, it would have known about the obvious and apparent sex trafficking, including the

PEIFFER WOLF CARR KANE
CONWAY & WISE
555 Montgomery Street, Suite 820
Francisco, California 94111
415.766.3544 phone • 415.840.9435 fax

PFEIFFER WOLF CARR KANE
CONWAY & WISE
555 Montgomery Street, Suite 820
Francisco, California 94111
415.766.3544 phone • 415.840.9435 fax

trafficking of Jane Doe (M.S.H.). Thus, under §1595(a), constructive knowledge of that trafficking is imputed to Wyndham.

73.    Wyndham should have known about Jane Doe (M.S.H.)'s trafficking because it also retained control over the response of the subject Knights Inn location to human trafficking, including development of policies and procedure regarding detection, disruption of and response to human trafficking. By failing to exercise reasonable diligence in discharge of this duty, Wyndham facilitated sex trafficking, including the sex trafficking of Jane Doe (M.S.H.) in their hotel. Thus, under §1595(a), constructive knowledge of that trafficking is imputed to Wyndham.

74.    Wyndham also should have known about Jane Doe (M.S.H.)'s trafficking because Wyndham retained the control to adopt and enforce policies on this subject for its properties, including the subject Knights Inn location, but failed to adopt and adequately enforce appropriate check-in, payment, and identification policies, which facilitated trafficking at the subject Knights Inn location and allowed traffickers to access rooms for the purpose of harboring their victims, including Jane Doe (M.S.H.). Thus, under §1595(a), constructive knowledge of that trafficking is imputed to Wyndham.

75.    Wyndham also should have known about Jane Doe (M.S.H.)'s trafficking because it retained control over the security of the subject Knights Inn location through various means including, upon information and belief, placing and monitoring security cameras, accepting and reviewing and responding to customer complaints, and inspecting the subject Knights Inn location. They also collected data regarding hotel operations and customers, including names, payment information, payment method, reservation history, wi-fi browsing data, and other details associated with their stay. If Wyndham had used reasonable prudence in monitoring and reviewing this information, it would have known about the ongoing trafficking. Thus, under §1595(a) constructive knowledge of that trafficking is imputed to Wyndham.

76.     Jane Doe (M.S.H.) exhibited the kind of obvious signs of sex trafficking that would have been detectable and detected if Wyndham had used reasonable diligence in the aspects of hotel operations over which it retained control.

77.     Moreover, Jane Doe (M.S.H.)'s trafficker was able to operate without interference and without making significant effort at a concealment because Wyndham adopted policies and practices that insulated Jane Doe (M.S.H.)'s trafficker from significant risk of detection or disruption.

**V.     Defendants' Ventures at the Knights Inn property.**

78.     Through the conduct described above, Wyndham knowingly benefited from engaging in a venture with sex traffickers at the subject Knights Inn location named herein, including Jane Doe (M.S.H.)'s traffickers, as follows:

  a. Wyndham and Franchisee Defendants both received benefits, including increased revenue, every time a room was rented at any Knights Inn location;

  b. This venture engaged in violations of 18 U.S.C. §1591 through the actions of the criminal traffickers at the Knights Inn location, which Wyndham and Franchisee Defendant knew or should have known about;

  c. Wyndham and Franchisee Defendants associated with traffickers, including Jane Doe (M.S.H.)'s traffickers, by acting jointly to continue to rent rooms to these traffickers despite having actual or constructive knowledge of their sex trafficking activity;

  d. Wyndham and Franchisee Defendants had a mutually beneficial relationship with the traffickers at the Knights Inn location, fueled by sexual exploitation of victims, including Jane Doe (M.S.H.);

  e. Sex traffickers, including Jane Doe (M.S.H.)'s traffickers, frequently used the Knights Inn location for their trafficking because of an implicit understanding that the Knights Inn location were an avenue that would facilitate their trafficking, providing minimal interference and lowering

PFEIFFER WOLF CARR KANE
CONWAY & WISE
555 Montgomery Street, Suite 820
Francisco, California 94111
415.766.3544 phone • 415.840.9435 fax

PLAINTIFF'S ORIGINAL COMPLAINT AND DEMAND FOR JURY TRIAL

their risk of detection. This understanding occurred because of the conduct of Wyndham and Franchisee Defendant facilitating that trafficking as described throughout this Complaint. This resulted in benefits, including increased revenue, for Wyndham and Franchisee Defendant;

f.  Wyndham and Franchisee Defendants participated in this venture through the conduct described throughout Plaintiff's Original Complaint, as they were jointly responsible for relevant aspects of hotel operations; and

g.  Jane Doe (M.S.H.)'s trafficking at the subject Knights Inn location was a result of Wyndham and Franchisee Defendant' participation in a venture with criminal traffickers. If Wyndham and Franchisee Defendant had not continued participating in a venture that they knew or should have known violated 18 U.S.C. §1591(a), they would not have received a benefit from Jane Doe (M.S.H.)'s trafficking at the subject Knights Inn location.

79.  Through the conduct described above, Wyndham also knowingly benefited from engaging in a commercial venture with Franchisee Defendant operating the Knights Inn location as follows:

a.  Wyndham associated with Franchisee Defendant to operate the Knights Inn location;

b.  Pursuant to the terms of the franchising agreement, both Wyndham and Franchisee Defendant received financial benefits from operating the Knights Inn, including revenue generated specifically by renting rooms to traffickers. They engaged in revenue sharing and had a common incentive to maximize revenue;

c.  By participating in a venture that facilitated sex trafficking, each Wyndham and Franchisees also benefitted by keeping operating costs

low, maintaining the loyalty of the segment of their customer base that seeks to participate in the sex trade and by not acknowledging the pervasive nature of sex trafficking in their hotels generally and the subject Knights Inn location specifically;

d. This venture violated 18 U.S.C. §§ 1591(a) and 1595(a) through the conduct of Franchisee Defendant and the widespread sex trafficking at the subject Knights Inn location named herein;

e. Despite its actual or constructive knowledge that the venture was engaged in violations of 18 U.S.C. §§ 1591(a) and 1595(a), Wyndham participated in the venture by continuing to associate with Franchisee Defendant to operate the Knights Inn location named herein in a way that it knew or should have known would lead to further violations of 18 U.S.C. §1591(a), including trafficking of victims like Jane Doe (M.S.H.); and

f. Jane Doe (M.S.H.)'s trafficking at the Knights Inn location named herein was a result of Wyndham's and Franchisee Defendant' facilitation of the widespread and ongoing violations of 18 U.S.C. §§ 1591(a) and 1595(a) at the Knights Inn location. Had Wyndham not continued participating in a venture that it knew or should have known was engaged in violations of 18 U.S.C. §§ 1591(a) and 1595(a), it would not have received a benefit from Jane Doe (M.S.H.)'s trafficking at the subject Knights Inn location named herein.

## VI. Franchisee Defendant and the Staff at the Knights Inn Location Named Herein Acted as Actual Agents of Wyndham.

80. Wyndham is vicariously liable for the acts, omissions, and knowledge of Franchisees and staff at the subject Knights Inn location named herein, which are Wyndham's actual agents or subagents.

PEIFFER WOLF CARR KANE
CONWAY & WISE
555 Montgomery Street, Suite 820
Francisco, California 94111
415.766.3544 phone • 415.840.9435 fax

81.    Wyndham subjected Franchisee Defendant to detailed standards and requirements regarding the operation of the subject Knights Inn location named herein through the franchising agreements, through detailed written policies and manuals, and through other formal and informal protocols, directives, mandates, and expectations imposed by Wyndham.

82.    Wyndham obscure the full extent of control they exercise over the franchisees by treating the manuals and certain policies as confidential and proprietary and prohibiting any public disclosure of those policies and manuals. Upon information and belief, the standards that Wyndham imposed on the franchisees:

a. Did not merely identify quality or outcome standards but instead specifically controlled the means, methods, and tools Franchisee Defendant used at the subject Knights Inn location;

b. Covered virtually all aspects of hotel operations, including internal operating functions;

c. Dictated the specific manner in which Franchisee Defendant and hotel staff must carry out most day-to-day functions at the subject Knights Inn location; and

d. Significantly exceeded what was necessary for Wyndham to protect its registered trademarks.

83.    In addition to the ways described above, upon information and belief, Wyndham exercised and reserved the right to exercise systemic and pervasive control over Franchisee Defendant' day-to-day operation of the subject Knights Inn location named herein, including the following ways:

a. Wyndham required franchisees and management of franchised hotels to participate in mandatory training programs, both during onboarding and on an ongoing basis. This training covered all aspects of hotel operations,

PEIFFER WOLF CARR KANE
CONWAY & WISE
555 Montgomery Street, Suite 820
Francisco, California 94111
415.766.3544 phone • 415.840.9435 fax

including aspects of hotel operations that go significantly beyond what would be necessary for Wyndham to protect their registered trademarks;

b.  Wyndham provided training for hotel management and select hotel staff on-site at the subject Knights Inn and at locations selected by Wyndham;

c.  Wyndham required all hotel staff to participate in training it created through an online learning platform it controlled and maintained;

d.  Wyndham controlled training provided by franchisees to hotel staff by dictating the content of that training, providing required content for that training, and dictating the training methods used;

e.  Wyndham retained sole discretion to determine whether all training had been completed satisfactorily;

f.  For certain products and services that franchisees were required to purchase to operate the subject Knights Inn location named herein, Wyndham designated approved vendors and prohibited franchisees from purchasing goods and services from anyone other than an approved vendor;

g.  Wyndham required franchisees to sign a technology agreement governing the terms under which franchisees must procure and use technical services and software while operating the subject Knights Inn location named herein. Franchisees were required to install, and use certain brands, types, makes, and/or models of hardware, software, peripheral equipment, and support services to perform internal operating functions at the hotel;

h.  Wyndham set required staffing levels for the subject Knights Inn location named herein;

i.  Wyndham established detailed job descriptions for all positions in its Knights Inn properties and drafted numerous, detailed policies that

PEIFFER WOLF CARR KANE
CONWAY & WISE
555 Montgomery Street, Suite 820
Francisco, California 94111
415.766.3544 phone • 415.840.9435 fax

PLAINTIFF'S ORIGINAL COMPLAINT AND DEMAND FOR JURY TRIAL

referenced these positions and dictated which positions must perform which tasks and how they must do so;

j. Wyndham set requirements for the hiring process used by franchisees and oversaw employee discipline processes and termination decisions;

k. Wyndham provided benefits for employees of franchised hotels;

l. Wyndham required Defendant Franchisees to use a customer resource management program maintained and operated by Wyndham;

m. Wyndham controlled channels for guests to report complaints or provide feedback regarding the subject Knights Inn location and directly participated in the response and/or supervised the response to customer complaints or other feedback. Wyndham retained the right to provide refunds or other compensation to guests and to require Defendant Franchisees to pay associated costs;

n. Wyndham generated reports and analysis of guest complaints and online reviews for the subject Knights Inn location;

o. Wyndham required Defendant Franchisees to use a Guest Relations Application owned, operated, and maintained by Wyndham to manage all guest data and information. Wyndham could use the backend of this system to analyze data and generate reports;

p. Wyndham set detailed requirements for insurance that franchisees must purchase and retain the right to purchase insurance for franchisees and to bill franchisees directly for that insurance if Wyndham determined that the franchisees have not purchased adequate insurance;

q. Wyndham regularly audited the books and records of Defendant Franchisees;

r. Wyndham conducted frequent and unscheduled inspections of Knights Inn properties, including the subject Knights Inn location named herein;

PEIFFER WOLF CARR KANE
CONWAY & WISE
555 Montgomery Street, Suite 820
Francisco, California 94111
415.766.3544 phone • 415.840.9435 fax

PLAINTIFF'S ORIGINAL COMPLAINT AND DEMAND FOR JURY TRIAL

s.  Wyndham retained the right to issue fines, require additional training, to impose and supervise implementation of detailed corrective action plans, and to take other steps up to and including termination of the franchising agreements if franchisees violated any of Wyndham's detailed rules, expectations, protocols, or policies, including those that governed day-to-day operations of the subject Knights Inn location named herein;

t.  Wyndham controlled all marketing for the subject Knights Inn location and prohibited franchisees from maintaining any online presence unless specifically reviewed and approved by Wyndham;

u.  Wyndham imposed detailed recordkeeping and reporting requirements on Defendant Franchisees regarding virtually all aspects of hotel operations;

v.  Wyndham supervised and controlled day-to-day operations of the subject Knights Inn location named herein through detailed information and extensive reports that it obtained through the property management system and other software systems it required Defendant Franchisees to use; and

w.  Wyndham retained the virtually unlimited right to revise policies or adopt new requirements for the day-to-day aspects of hotel operations.

84.  Wyndham is also vicariously liable because it retained and exercised control over the specific instrumentalities and aspects of operations that caused Jane Doe (M.S.H.)'s harm, including but not limited to reservations of rooms, hotel security, and detection of and response to suspected sex trafficking. Wyndham had the right to exercise detailed, day-to-day control over and involvement in these areas. It also regularly and closely monitored these areas.

PEIFFER WOLF CARR KANE
CONWAY & WISE
555 Montgomery Street, Suite 820
Francisco, California 94111
415.766.3544 phone • 415.840.9435 fax

## VII.   Defendants are Jointly and Severally Liable for Jane Doe (M.S.H.)'s Damages.

85.     The venture or ventures in which each Defendant participated were direct, producing, and proximate causes of the injuries and damages to Jane Doe (M.S.H.).

86.     Under the TVPRA, Defendants are jointly and severally liable for all damages that a jury awards to Jane Doe (M.S.H.) for past and future losses she suffered as a proximate result of her sexual exploitation and trafficking.

### CAUSE OF ACTION—SEX TRAFFICKING UNDER THE TVPRA

87.     Jane Doe (M.S.H.)  incorporates all previous allegations.

## I.      Count 1: Perpetrator liability under 18 U.S.C §1595(a) based on violation of 18 U.S.C §1591(a).

88.     Jane Doe (M.S.H.) is a victim of sex trafficking within the meaning of §1591 and 1595(a) and is thus entitled to bring a civil action under 18 U.S.C §1595(a) against the "perpetrator" of any violation of the TVPRA.

89.     Both Wyndham and Franchisee Defendants are perpetrators within the meaning of 18 U.S.C §1595(a) because Wyndham and Franchisee Defendant:

a. violated 18 U.S.C §1591(a)(1) when, through the acts and omissions described throughout this Complaint, it harbored individuals (including Jane Doe (M.S.H.) knowing or in reckless disregard of the fact that the victims would be caused, through force, coercion, or fraud, to engage in commercial sex acts while at its respective hotel property; and

b. violated 18 U.S.C §1591(a)(2) when, through the acts and omissions described throughout this Complaint, it knowingly received financial benefit by knowingly assisting, supporting, or facilitating a venture that was engaged in violations under 18 U.S.C §1591(a)(1) at its respective hotel properties.

PEIFFER WOLF CARR KANE
CONWAY & WISE
555 Montgomery Street, Suite 820
Francisco, California 94111
415.766.3544 phone • 415.840.9435 fax

90.   Violations of 18 U.S.C §1595(a) by each of the Defendants as "perpetrators" operated, jointly, with other unlawful acts and omissions alleged in this Amended Petition, to cause Jane Doe (M.S.H.) to suffer substantial physical and psychological injuries and other damages because of being trafficked and sexually exploited at the Defendants' hotel properties.

## II.   Count 2: Beneficiary Liability under §1595 (a) of the TVPRA.

91.   Jane Doe (M.S.H.) is a victim of sex trafficking within the meaning of 18 U.S.C §§ 1591 and 1595(a) and is thus entitled to bring a civil action under the "beneficiary" theory in 18 U.S.C §1595(a) against anyone who knowingly benefited from participation in a venture that the person knew or should have, with reasonable diligence, known was engaged in a violation of the TVPRA.

92.   Through acts and omissions described throughout this Complaint, Wyndham and Franchisee Defendants received a financial benefit from participating in a venture with traffickers, including Jane Doe (M.S.H.)'s traffickers, despite the fact that each defendant knew or should have known that these traffickers, including Jane Doe (M.S.H.)'s traffickers, were engaged in violations of 18 U.S.C §1591(a)(1) and 18 U.S.C §1591(a)(2). Thus, Wyndham and Franchisee Defendants are liable as a beneficiary under 18 U.S.C §1595(a).

93.   Through the acts and omissions described throughout this Complaint, Wyndham received a financial benefit from participating in a venture with its respective franchisees regarding the operations of its respective hotel properties even though Franchisor Defendants knew or should have known that this venture was violating 18 U.S.C §§ 1591(a) and 1595(a).

94.   Violations of 18 U.S.C §1595(a) by Wyndham as "beneficiaries" operated, jointly, with other unlawful acts and omissions alleged in this Complaint, to cause Jane Doe (M.S.H.) to suffer substantial physical and psychological injuries and other damages because of being trafficked and sexually exploited at the Defendants' hotel properties.

PEIFFER WOLF CARR KANE
CONWAY & WISE
555 Montgomery Street, Suite 820
Francisco, California 94111
415.766.3544 phone • 415.840.9435 fax

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PFEIFFER WOLF CARR KANE
CONWAY & WISE
555 Montgomery Street, Suite 820
Francisco, California 94111
415.766.3544 phone • 415.840.9435 fax

### III.    Count 3: Vicarious Liability for TVPRA Violations.

95.    Franchisee Defendant acted as the actual agent of Wyndham when operating its respective hotel property.

96.    Through the acts and omissions described throughout this Complaint, Wyndham exercised or retained the right to exercise systematic and day-to-day control over the means and methods used by its franchisees to operate its respective hotel property.

97.    Under the TVPRA and the federal common law, a principal is vicariously liable for the violations of its actual agents and its subagents.

98.    Wyndham is vicariously liable for the TVPRA violations of its franchisees and the subagents of that franchisee.

99.    As alleged above, Wyndham is directly liable to Jane Doe (M.S.H.) for violations of the TVPRA, both as a perpetrator under 18 U.S.C §1591(a) and as a beneficiary under 18 U.S.C §1595(a). Franchisee Defendant is also directly liable to Jane Doe (M.S.H.) under § 2255. G6 is vicariously liable to Jane Doe (M.S.H.) for those same violations.

### **DAMAGES**

100.    Defendants' acts and omissions, individually and collectively, caused Jane Doe (M.S.H.) to sustain legal damages.

101.    Hilton and Franchisee Defendants are joint and severally liable for all past and future damages sustained by Jane Doe (M.S.H.).

102.    Jane Doe (M.S.H.) is entitled to be compensated for personal injuries and economic damages, including:

      a.    Actual damages (until trial and in the future);

      b.    Incidental and consequential damages (until trial and in the future);

      c.    Mental anguish and emotional distress damages (until trial and in the future);

      d.    Lost earnings and lost earning capacity (until trial and in the future);

36

e.  Necessary medical expenses (until trial and in the future);

f.  Life care expenses (until trial and in the future);

g.  Physical pain and suffering (until trial and in the future);

h.  Physical impairment (until trial and in the future);

i.  Exemplary/Punitive damages;

j.  Attorneys' fees;

k.  Costs of this action;

l.  Pre-judgment and all other interest recoverable; and

m. For such other and further relief as the Court may deem just and proper.

## **RELIEF SOUGHT**

103.   WHEREFORE, Jane Doe (M.S.H.) prays that this case be set for trial before a jury and that, upon a final hearing of the cause, judgment be entered for Jane Doe (M.S.H.) against all Defendants jointly and severally for the actual, compensatory, and punitive damages as the evidence may show, and the jury may determine to be proper, together with the costs of suit, prejudgment interest, post-judgment interest, and such other and further relief to which Jane Doe (M.S.H.) may, in law or in equity, show herself to be justly entitled.

Dated:  June 10, 2024

Respectfully submitted,

*/s/Brian J. Perkins*
Brian J. Perkins
CA State Bar No. 315870
PEIFFER WOLF CARR KANE CONWAY & WISE
555 Montgomery Street, Suite 820
San Francisco, California 94111
Telephone: (415) 766-3544
Email: bperkis@peifferwolf.com

Annie McAdams, *pro hac vice*
ANNIE MCADAMS PC
2900 North Loop West, Suite 1130
Houston, Texas  77092

PEIFFER WOLF CARR KANE CONWAY & WISE
555 Montgomery Street, Suite 820
Francisco, California 94111
415.766.3544 phone • 415.840.9435 fax

Telephone:  (713) 785-6262
annie@mcadamspc.com

Bryan O. Blevins, *pro hac vice*
PROVOST UMPHREY LAW FIRM
350 Pine Street, Ste., 1100
Beaumont, TX 77701
Phone: (409) 835-6000
bblevins@pulf.com

David E. Harris, *pro hac vice*
Preston Burns
CA State Bar No. 300358
SICO HOELSCHER HARRIS, LLP
819 N. Upper Broadway
Corpus Christi, Texas  78401
Telephone:  (361) 653-3300
dharris@shhlaw.com
pburns@shhlaw.com

Attorneys for Plaintiff

PEIFFER WOLF CARR KANE
CONWAY & WISE
555 Montgomery Street, Suite 820
Francisco, California 94111
415.766.3544 phone • 415.840.9435 fax

PLAINTIFF'S ORIGINAL COMPLAINT AND DEMAND FOR JURY TRIAL

1

## DEMAND FOR JURY TRIAL

2

3

PLAINTIFF Jane Doe (M.S.H.) hereby demands a trial by jury as to all claims and issues in this action that are so triable.

4

Dated:  June 10, 2024

Respectfully submitted,

5

6

/s/Brian J. Perkins

Brian J. Perkins

CA State Bar No. 315870

7

PEIFFER WOLF CARR KANE CONWAY & WISE

8

9

555 Montgomery Street, Suite 820

San Francisco, California 94111

10

Telephone: (415) 766-3544

Email: bperkis@peifferwolf.com

11

12

Annie McAdams, *pro hac vice*

ANNIE MCADAMS PC

13

2900 North Loop West, Suite 1130

14

Houston, Texas  77092

Telephone:  (713) 785-6262

15

annie@mcadamspc.com

16

17

Bryan O. Blevins, *pro hac vice*

PROVOST UMPHREY LAW FIRM

18

350 Pine Street, Ste., 1100

19

Beaumont, TX 77701

Phone: (409) 835-6000

20

bblevins@pulf.com

21

22

23

24

25

26

27

28

PEIFFER WOLF CARR KANE CONWAY & WISE
555 Montgomery Street, Suite 820
Francisco, California 94111
415.766.3544 phone • 415.840.9435 fax

PLAINTIFF'S ORIGINAL COMPLAINT AND DEMAND FOR JURY TRIAL

1

2
David E. Harris, *pro hac vice*
Preston Burns
3
CA State Bar No. 300358
4
SICO HOELSCHER HARRIS, LLP
819 N. Upper Broadway
5
Corpus Christi, Texas  78401
6
Telephone:  (361) 653-3300
dharris@shhlaw.com
7
pburns@shhlaw.com

8
Attorneys for Plaintiff
9

10

11

PEIFFER WOLF CARR KANE
CONWAY & WISE
555 Montgomery Street, Suite 820
Francisco, California 94111
415.766.3544 phone • 415.840.9435 fax

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S ORIGINAL COMPLAINT AND DEMAND FOR JURY TRIAL